# In the United States Court of Federal Claims

No. 19-2023C

(Filed: January 13, 2020)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| SHERRY G. FANELLI, | \* |
| Plaintiff, | \* |
| v. | \*    Pro Se Plaintiff; Jurisdiction; Sua Sponte Dismissal |
| THE UNITED STATES, | \* |
| Defendant. | \* |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Sherry G. Fanelli, Poughkeepsie, NY, pro se.

**OPINION AND ORDER**

**SWEENEY**, Chief Judge

This case arises out of pro se plaintiff Sherry G. Fanelli's complaint concerning claims related to a bank foreclosing on her home and the related legal proceedings. Specifically, Ms. Fanelli alleges that the debt is fraudulent, the foreclosure is unlawful, and the legal proceedings were deficient. In addition to seeking relief for those purported wrongs, Ms. Fanelli requests that the court grant her application to proceed in forma pauperis. As explained below, the court lacks subject-matter jurisdiction over Ms. Fanelli's complaint. Therefore, in addition to granting Ms. Fanelli's application to proceed in forma pauperis, the court dismisses her complaint for lack of jurisdiction sua sponte.

## I. BACKGROUND

In 2004, Ms. Fanelli applied for and received a thirty-year home equity loan from the Bank of New York, which assigned the loan to JPMorgan Chase ("JPMorgan" or "the bank").[1] JPMorgan informed Ms. Fanelli in early 2014 that her monthly payment would be increasing. Ms. Fanelli asked JPMorgan to modify her loan because she could not pay the increased rate, but the bank declined to do so. The bank subsequently began the foreclosure process, which occurred in the Supreme Court of the State of New York. The state court granted JPMorgan's

---

[1] The facts in this section are derived from the complaint, including the affidavit Ms. Fanelli filed with her complaint, and matters of which the court may take judicial notice pursuant to Rule 201 of the Federal Rules of Evidence. See Rocky Mountain Helium, LLC v. United States, 841 F.3d 1320, 1325-26 (Fed. Cir. 2016).

motion for summary judgment and directed the appointment of a referee to conduct the foreclosure sale, which occurred on November 14, 2019.

Ms. Fanelli challenges the actions of various actors in connection with the foreclosure proceedings. In her affidavit, Ms. Fanelli alleges that the state court ignored her filings, the presiding judge in that case perjured herself, the official in charge of conducting the foreclosure auction violated federal law by agreeing to accept only a certified check or money order during the bidding, and the bank engaged in various forms of fraudulent conduct related to the loan. She further avers that she was denied due process during the proceedings.

In her complaint, Ms. Fanelli makes tangential references to the contents of her affidavit by referencing the state court case.[2] She alleges that the officials in that case—whom she calls "Traffickers"—are acting without her authority such that they are "committing harm, injury, and war crimes against [her]" in violation of trafficking laws, the Universal Declaration of Human Rights ("UDHR"), and the law of nations. Compl. 3. She also claims that the "New York State Supreme Court, County of Dutchess, Dutchess County District Attorney's Office, and [United States] Department of Health & Human Services, are forcing [her] into their association . . . in violation of the [UDHR] and thereby has taken [her] Property rights by taking [her] intangible property rights . . . ." Id. at 8. She further alleges

> intentional unjust conviction and imprisonment, Human trafficking in Person by force, fraud and coercion, isolating, enticing, transporting, holding, confining, harboring, profiting, soliciting, depriving liberty, threatening legal actions, psychological control, financial threats, legal harassment, withholding passport, threatening force, debt bondage, causing financial harm, kidnapping and abduction, abusing position of power . . . .

Id. at 9. The court collectively refers to the purported wrongs identified in the preceding sentence as "Improper Conduct." Additionally, Ms. Fanelli avers that she is seeking a remedy for violations of:

> 18 § 241, 42 § 1983, § 1984, § 1985, § 1986, 73.10, HR-192, 25 CFR § 11.448, 18; 12 U.S.C. 1813(L)(1), 12 U.S.C. §§248 and 347, FAS 140, F. R. Civ. P. 17(a), 5 U.S.C. § 552(a), F. R. Civ. P. 17(a), UCC § 1-206(4), 18 U.S. Code § 1341, 18

---

[2] Ms. Fanelli's complaint is replete with confusing statements that seemingly reflect concepts grounded in ideas espoused by Moorish sovereign citizens or similar movements. For example, she refers to herself as a trustee for "SHERRY G. FANELLI, [Personal Member Association]," Compl. 2, which is typical of sovereign citizens, see Bey v. State, 847 F.3d 559, 560-61 (7th Cir. 2017) ("Many sovereign citizen organizations teach that whenever a Moor's name is spelled in capital letters in a government document, the name identifies not the individual but instead his 'corporate shell identity' . . . ."). Although it is difficult to discern what Ms. Fanelli is attempting to convey in the portions of the complaint and affidavit that are more heavily steeped in sovereign citizen concepts, the court can parse the crux of the allegations and claims.

U.S. Code § 241 and 242, 25 CFR § 11.448, 14th Amendment, 38th Congress, Session I, Ch. 106, Article 6, Clause 3 of Constitution, Article 8.105, 42 U.S. Code § 1986, 42 U.S. Code § 1985, 12 U.S. Code § 411, Executive Order 13818, 6th amendment, US CFR 72.11, 37 Am Jur 2d § 8, 18 U.S. Code § 2385, 18 U.S. Code § 15, Title 50 of the Territorial Federal Code, U.S. Penal Code 10 Chapter 15 Statute 333, 18 U.S.C. § 1951, 6.18.1951-3 Hobbs Act, 6.18.1951-7 Hobbs Act - Affecting Interstate Commerce, Trading With The Enemy Act Of 1917 Act OCT. 6, 1917, CH. 106, 40 Stat. 411, Title 50, Appendix—War And National Defense § 7 (c) and § 8, "Sunset Clause" that is applicable to end the "Victory Tax", 1934 Amendment to the Trading With the Enemy Act, § 24 (b) of the Trading with the Enemy Act, June 18, 1934. [8. 852.] I Public, No. 374.] Trading with the Enemy Act, amended. Vol. 42, p. 1516; Vol. 4., p. 277., Rule 19 - Required Joinder of Parties, 18 USC 9, "return to rightful owner clause[.]"

Compl. 1-2.[3] She alleges that the court has jurisdiction to entertain claims to remedy such "code violations" pursuant to 28 U.S.C. §§ 1491 and 1495. Id. at 1.

Ms. Fanelli concludes by requesting that the court dismiss all of the cases against her for lack of jurisdiction or venue and apply equitable estoppel (apparently to undo the foreclosure). She also requests that the court award her "$300,400,000.00 for all the intentional fraud, theft, battery, assault, financial losses, misrepresentation, emotional infliction of mental distress, trespassing to land, trespassing to chattel, and conversion and duress . . . ." Id. at 10.

## II. LEGAL STANDARDS

### A. Pro Se Plaintiffs

Pro se pleadings are "held to less stringent standards than formal pleadings drafted by lawyers" and are "to be liberally construed." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (internal quotation marks omitted). However, the "leniency afforded to a pro se litigant with respect to mere formalities does not relieve the burden to meet jurisdictional requirements." Minehan v. United States, 75 Fed. Cl. 249, 253 (2007); accord Henke v. United States, 60 F.3d 795, 799 (Fed. Cir. 1995) ("The fact that [the plaintiff] acted pro se in the drafting of his complaint may explain its ambiguities, but it does not excuse its failures, if such there be."). In other words, a pro se plaintiff is not excused from her burden of proving, by a preponderance of evidence, that the court possesses jurisdiction. See McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 179 (1936); Banks v. United States, 741 F.3d 1268, 1277 (Fed. Cir. 2014).

---

[3] The above reflects a verbatim copy of the relevant portion of Ms. Fanelli's complaint. The court notes that she provides some citations that are incomplete and mentions other citations more than once.

### B. Subject-Matter Jurisdiction

Whether the court possesses jurisdiction to decide the merits of a case is a "threshold matter." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998). Subject-matter jurisdiction cannot be waived or forfeited because it "involves a court's power to hear a case." Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006) (quoting United States v. Cotton, 535 U.S. 625, 630 (2002)). "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." Ex parte McCardle, 74 U.S. (7 Wall) 506, 514 (1868). Therefore, it is "an inflexible matter that must be considered before proceeding to evaluate the merits of a case." Matthews v. United States, 72 Fed. Cl. 274, 278 (2006); accord K-Con Bldg. Sys., Inc. v. United States, 778 F.3d 1000, 1004-05 (Fed. Cir. 2015). Either party, or the court sua sponte, may challenge the court's subject matter-jurisdiction at any time. Arbaugh, 546 U.S. at 506; see also Jeun v. United States, 128 Fed. Cl. 203, 209-10 (2016) (collecting cases).

### C. The Tucker Act

The ability of the United States Court of Federal Claims ("Court of Federal Claims") to entertain suits against the United States is limited. "The United States, as sovereign, is immune from suit save as it consents to be sued." United States v. Sherwood, 312 U.S. 584, 586 (1941). The waiver of immunity "may not be inferred, but must be unequivocally expressed." United States v. White Mountain Apache Tribe, 537 U.S. 465, 472 (2003). The Tucker Act, the principal statute governing the jurisdiction of this court, waives sovereign immunity for claims against the United States, not sounding in tort, that are founded upon the United States Constitution, a federal statute or regulation, or an express or implied contract with the United States. 28 U.S.C. § 1491(a)(1) (2018); White Mountain, 537 U.S. at 472. However, the Tucker Act is merely a jurisdictional statute and "does not create any substantive right enforceable against the United States for money damages." United States v. Testan, 424 U.S. 392, 298 (1976). Instead, the substantive right must appear in another source of law, such as a "money-mandating constitutional provision, statute or regulation that has been violated, or an express or implied contract with the United States." Loveladies Harbor, Inc. v. United States, 27 F.3d 1545, 1554 (Fed. Cir. 1994) (en banc).

## III. ANALYSIS

Ms. Fanelli's complaint reflects, at its core, her disagreement with a state court's decision concerning foreclosure and the actions of various actors who she believes were involved in that process (either in connection with the loan, court proceedings, or foreclosure auction). The threshold matter here, as noted above, is subject-matter jurisdiction. Ms. Fanelli advances two bases for jurisdiction over her claims: 28 U.S.C. § 1491 and 28 U.S.C. § 1495. However, neither statute provides the court with jurisdiction to entertain her claims.

## A. 28 U.S.C. § 1491

As an initial matter, the court cannot exercise jurisdiction over Ms. Fanelli's complaint based on 28 U.S.C. § 1491 because she fails to identify a contract or a money-mandating source of law. As noted above, Ms. Fanelli says she is seeking redress for various "code violations." Compl. 1. The court can separate most of those "codes" and other identified sources of law into five categories:

- civil rights statutes, id. at 1-2 (referring to 42 U.S.C. §§ 1983, 1984, 1985, 1986);

- criminal laws and regulation, id. (referring to 18 U.S.C. §§ 9, 15, 241, 242, 1341, 1951, 2385 and 25 C.F.R. § 11.448);

- constitutional provisions, id. (referring to Article VI, Clause 3; the Sixth Amendment; and the Fourteenth Amendment); Compl. Ex. 1 at 7 (asserting a due process violation)

- court procedural rules, id. (referring to Federal Rule of Civil Procedure 17(a) and "Rule 19 – Required Joinder of Parties"); and

- international law, id. at 3 (referring to the UDHR and law of nations).

The court cannot exercise jurisdiction based on the above sources because they are not money mandating; in other words, they do not permit the payment of money damages in the event of their violation. See, e.g., Upshaw v. United States, 599 F. App'x 387, 388 (Fed. Cir. 2015) (criminal code); Allen v. United States, 546 F. App'x 949, 950 (Fed. Cir. 2013) (court procedural rules); LeBlanc v. United States, 50 F.3d 1025, 1028 (Fed. Cir. 1995) (due process); Dupre v. United States, 229 Ct. Cl. 706, 706 (1981) (Sixth Amendment); Hover v. United States, 113 Fed. Cl. 295, 296 (2013) (civil rights), aff'd, 566 F. App'x 918 (Fed. Cir. 2014); Gimbernat v. United States, 84 Fed. Cl. 350, 354 (2008) (UDHR); Fry v. United States, 72 Fed. Cl. 500, 508 (2006) (Fourteenth Amendment); Phaidin v. United States, 28 Fed. Cl. 231, 234 (1993) (international law).

Ms. Fanelli also identifies a variety of sources of law that do not fit into the above categories. See Compl. 1-2 (referring to banking laws codified at 12 U.S.C. §§ 248, 347, 411, 1813(L)(1)); id. at 1 (discussing 5 U.S.C. § 552(a), which concerns the information an agency must release), id. (relying on a law restricting certain banks from holding real estate under mortgage for more than five years);[4] id. at 2 (mentioning Executive Order 13818, which concerns restrictions on property held by human rights abusers); id. (noting the "Sunset Clause,"

---

[4] Specifically, Ms. Fanelli refers to "38th Congress, Session I, Ch. 106," Compl. 1, which the court reads as a reference to the National Bank Act of 1864, ch. 106, 13 Stat. 99. In her affidavit, Ms. Fanelli further clarifies that she is focusing on the mortgage limitation contained in that law. Compl. Ex. 1 at 9.

which repealed an income tax passed during World War II). But the statutes and executive orders she lists in her complaint do not require the federal government to provide compensation. Otherwise stated, they are not money-mandating sources of law within the meaning of the Tucker Act.

Ms. Fanelli fares no better with her reference to materials that are neither identifiable by the court, id. at 1-2 (referring to "HR-192," "73.10," "US CFR 72.11," "Title 50 of the Territorial Federal Code," "U.S. Penal Code 10 Chapter 15 Statute 333," and the "return to rightful owner clause"), nor sources of law within the meaning of the Tucker Act, id. at 1-2 (referring to a couple jury instructions concerning the Hobbs Act, a provision of American Jurisprudence, a Statement of Financial Accounting Standards, and a couple Universal Commercial Code sections). See 28 U.S.C. § 1491(a)(1) (identifying the United States Constitution, federal statutes and regulations, and express and implied contracts with the United States as sources of law); Fisher v. United States, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc) (explaining that there is jurisdiction under the Tucker Act when there is a "source of substantive law that creates the right to money damages"); cf. Minehan v. United States, 75 Fed. Cl. 249, 253 (2007) (explaining that the court has no duty to create a claim where a pro se plaintiff has not spelled out such a claim in the complaint).

Ms. Fanelli identifies one source of law that may be money mandating—the Trading with the Enemy Act of 1917, ch. 106, 40 Stat. 411 (codified as amended at 50 U.S.C. §§ 4301-4341 (2018)).[5] For the purpose of this opinion, the court assumes that at least portions of that law have been codified as a money-mandating statute. But the existence of such a statute is not the end of the jurisdictional inquiry. Ms. Fanelli's complaint, as noted above, is grounded in sovereign citizen concepts. Supra note 2. Thus, her allegations are frivolous such that the court lacks jurisdiction over her complaint even if the Trading with the Enemy Act (or any of the other sources noted in her complaint) is money mandating.[6] See United States v. Sterling, 738 F.3d 228, 233 n.1 (11th Cir. 2013) (explaining that courts routinely reject sovereign citizen legal theories as "frivolous"); Moden v. United States, 404 F.3d 1335, 1340-41 (Fed. Cir. 2005) (explaining that the court lacks jurisdiction over frivolous claims).

---

[5] The law, among other things, authorizes the President to seize property associated with enemies of the United States and permits affected individuals to bring a lawsuit for the net proceeds, which are held by the government trustee, resulting from the sale of the confiscated property. 50 U.S.C. § 4307(c).

[6] Moreover, as relevant to the Trading with the Enemy Act, Ms. Fanelli's claim is frivolous for an additional reason: she has no allegations related to that law in her complaint. Ms. Fanelli does not allege that she held property connected with an enemy of the United States, the President seized her property pursuant to the law, the trustee sold such property, or she is seeking proceeds from such a sale. See supra note 5 (discussing the relevant portion of the Trading with the Enemy Act). Simply stated, her bald assertion that the she is seeking redress for a violation of the law is a frivolous allegation that cannot support the court's exercise of jurisdiction. See Lopez v. U.S. Dep't of Interior, 867 F.2d 616 (Fed. Cir. 1989) (per curiam) (table).

### B. 28 U.S.C. § 1495

Ms. Fanelli also does not advance her cause by relying on 28 U.S.C. § 1495. Pursuant to that statute, the court can entertain "any claim for damages by any person unjustly convicted of an offense against the United States and imprisoned." The Court of Federal Claims can only adjudicate a claim on the aforementioned grounds "after a[nother] court has reversed a plaintiff's conviction on the grounds of innocence or . . . the President of the United States has pardoned the plaintiff." Phang v. United States, 87 Fed. Cl. 321, 330 (2009), aff'd sub nom. Phu Mang Phang v. United States, 388 F. App'x 961 (Fed. Cir. 2010); accord 28 U.S.C. § 2513. Ms. Fanelli, however, does not identify any reversed or pardoned conviction. Thus, the court cannot exercise jurisdiction over Ms. Fanelli's complaint based on § 1495.

### C. Other Jurisdictional Issues

Notwithstanding the above jurisdictional issues, the court lacks jurisdiction over portions of Ms. Fanelli's complaint for other reasons as well. The court cannot entertain her claims concerning the New York State Supreme Court's decision because the Court of Federal Claims lacks jurisdiction over challenges to state court rulings. Joshua v. United States, 17 F.3d 378, 380 (Fed. Cir. 1994). There is no jurisdiction over her claims against JPMorgan, the New York State Supreme Court, the state court judge in her foreclosure case, the Dutchess County District Attorney's Office, and the Dutchess County Deputy Sheriffs' Association because the court cannot entertain claims against state or private actors.[7] See 28 U.S.C. § 1491(a)(1) (providing jurisdiction for claims against the United States); see also Nat'l City Bank of Evansville v. United States, 163 F. Supp. 846, 852 (Ct. Cl. 1958) ("It is well established that . . . a controversy between private parties could not be entertained [in this court]."); Anderson v. United States, 117 Fed. Cl. 330, 331 (2014) ("This court does not have jurisdiction over any claims alleged against states, localities, state and local government entities, or state and local government officials and employees; jurisdiction only extends to suits against the United States itself."). Additionally, many of Ms. Fanelli's allegations of Improper Conduct reflect purported wrongdoings that sound in tort or reflect criminal conduct, and the court cannot exercise jurisdiction over claims premised on such conduct. Haka v. United States, 107 Fed. Cl. 111, 114 (2012) ("The court has no jurisdiction to decide claims involving violations of the criminal code or claims sounding in tort." (citations omitted)); see 28 U.S.C. § 1491(a)(1).

### IV. APPLICATION TO PROCEED IN FORMA PAUPERIS

Finally, the court turns to Ms. Fanelli's application to proceed in forma pauperis. To proceed with a civil action in this court, a plaintiff must either pay $400 in fees—a $350 filing fee plus a $50 administrative fee—or, like Ms. Fanelli, request authorization to proceed without

---

[7] In her complaint, she refers to the United States Department of Health & Human Services a couple of times, but she does not explain how that department was involved in any of the events giving rise to her claims.

payment of fees by submitting a signed application to proceed in forma pauperis.[8]  See 28 U.S.C. §§ 1915, 1926; R. Ct. Fed. Cl. 77(c); see also Waltner v. United States, 93 Fed. Cl. 139, 141 n.2 (2010) (concluding that 28 U.S.C. § 1915(a)(1) applies to both prisoners and nonprisoners alike).  Plaintiffs wishing to proceed in forma pauperis must submit an affidavit that (1) lists all of their assets, (2) declares that they are unable to pay the fees, and (3) states the nature of the action and their belief that they are entitled to redress.  28 U.S.C. § 1915(a)(1).  Evaluation of a plaintiff's ability to pay is "left to the discretion of the presiding judge, based on the information submitted by the plaintiff."  Alston-Bullock v. United States, 122 Fed. Cl. 38, 45 (2015).

Ms. Fanelli has substantially fulfilled all three requirements of 28 U.S.C. § 1915(a)(1), and the court is satisfied that she is unable to pay the filing fee otherwise required by Rule 77.1(c) of the United States Court of Federal Claims.  Therefore, the court grants Ms. Fanelli's application and waives her filing fee.

## V. CONCLUSION

For the reasons explained above, the Court of Federal Claims lacks jurisdiction to entertain Ms. Fanelli's claims.  Accordingly, the court **DISMISSES** Ms. Fanelli's complaint without prejudice.  No costs.  The clerk is directed to enter judgment accordingly.

In addition, the court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith because, as asserted, Ms. Fanelli's claims are clearly beyond the subject-matter jurisdiction of this court.

**IT IS SO ORDERED.**

MARGARET M. SWEENEY
Chief Judge

---

[8] While the Court of Federal Claims is not generally considered to be a "court of the United States" within the meaning of title 28 of the United States Code, 28 U.S.C. § 451, the court has jurisdiction to adjudicate applications to proceed in forma pauperis.  See 28 U.S.C. § 2503(d) (deeming the Court of Federal Claims to be a "court of the United States" for purposes of 28 U.S.C. § 1915).